**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFREY JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 14-cv-3074 |
| | ) | |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant City of Chicago's motion for summary judgment [54]. For the reasons stated below, the Court grants Defendant's motion [54].

**I.   Background**

The Court takes the relevant facts primarily from the parties' Local Rule ("L.R.") 56.1 statements, [53], [56], [58], and [59]. The following facts are undisputed except where otherwise noted.

Plaintiff Jeffrey Jordan ("Plaintiff") has been employed by Defendant the City of Chicago ("City") as an electrical engineer in the Department of Aviation ("DOA") since 1986. Plaintiff's duties include installing, maintaining, inspecting, and testing electrical wiring, conduits, and lighting systems. In January 1998, while working at O'Hare Airport in his capacity as an electrical engineer, Plaintiff slipped and fell on ice and sustained a back injury. In March 1998, Plaintiff was placed on a duty disability leave of absence. He filed a workers' compensation claim against the City in March 1998 based on the back injury that he sustained while on duty.

Plaintiff remained on duty disability leave until December 2012. While Plaintiff was on leave, he underwent four back surgeries. In 2010, Plaintiff contacted Josephine Love ("Love"),

the City's Administrative Services Officer, about the procedure for returning to work from duty disability leave. Love's supervisor was Angela Manning ("Manning"). Manning was the DOA's Managing Deputy of Administration and the decision-maker on employee requests for reinstatement from leaves of absence.

At some point in 2011, Plaintiff determined that he was physically able to return to work as an electrical mechanic. He contacted Love a second time and she informed him that in order to return to work he must (1) obtain a doctor's release to full duty, and (2) settle his workers' compensation claim. On December 1, 2011, Plaintiff and the City entered into an agreement to settle Plaintiff's workers' compensation claim. See [58-15]. Under the settlement, the City agreed to make a lump sum payment to Plaintiff of $289,152.53. *Id.* at 4. Plaintiff understood that the settlement was "negotiated for [him] to return to work closing the medical" compensation claim. [56] at 6. Nothing in the settlement expressly prohibited Plaintiff from returning to work for the City as a mechanical engineer. See *generally* [58-15].

On January 30, 2012, Plaintiff's doctor, Dr. Stephen Mardjetko, signed an "Injured Worker Physician Assessment Report" indicating that Plaintiff was able to return to full work duty without restrictions. The same day, Plaintiff met with Love for a third time and presented her with Dr. Mardjetko's release. According to Plaintiff, Love told him that she would need about a month to investigate and would get back to him about his reinstatement, but she never did. That day, Plaintiff also told Manning that he was requesting reinstatement. Manning asked to review Plaintiff's documentation, including his workers' compensation file and settlement agreement. Manning reviewed Plaintiff's workers' compensation file and settlement agreement and consulted with attorneys from the City to determine whether Plaintiff could be reinstated. On or about January 30, 2012, she determined that Plaintiff could not be reinstated. At her

deposition, Manning was unable to identify which medical documents from the workers' compensation file she used to make her decision. [53-10] at 39-40, 47. While the City denies that Manning evaluated whether Plaintiff could perform the essential duties of the electrical mechanic position, Manning testified at her deposition that, based on her review of all of Plaintiff's documentation, she concluded that Plaintiff was unable to perform any of the essential duties of his job that required lifting, the use of ladders or heavy power tools, or a tolerance of heights. [53-10] at 124-25. Additionally, in its interrogatory responses, which Manning verified, the City stated that it "justifiably and reasonably concluded that Plaintiff could not perform the essential functions of an Electrical Mechanic," and that "Manning made the decision not to permit Plaintiff to return to work full duty based on documentation of his permanent and total disability, as well as Plaintiff's medical documentation provided by himself and the City's third-party workers' compensation administrator." [58-16] at 3 (Interrogatory 2), 9 (Interrogatory 10), 14 (Manning's verification). About three or four weeks after his third meeting with Love (between February 20 and 27, 2012) Plaintiff had a final meeting with Love. According to Plaintiff's Rule 56.1 statement, "Love informed Plaintiff he could not be returned to work due to a clause in the settlement agreement." [58] at 6.

Around this time, Plaintiff contacted his union's business agent, Mike Gogola ("Gogola"). On March 8, 2012, Plaintiff wrote an email to Gogola in which he stated: "I am still covered by the IBEW contract with the City while returning to duty from Workers' Compensation and also covered by the 'Federal Americans with Disabilities Act' if the City is claiming I'm disabled even though I can do the job in full capacity, and nothing in my settlement says otherwise. I was not required to resign or relinquish my position in any way." [56] at 12. On May 2, 2012, Plaintiff sent Gogola an email requesting that the union file a grievance on his

3

behalf because he had not been reinstated. On May 13, 2012, Plaintiff sent Gogola an email in which he stated that Love had told him that the City would not return anyone to work with restrictions and described this as a "clear violation" of the ADA. [56] at 14.

The union filed a grievance on Plaintiff's behalf on May 14, 2012. See [58-7]. The grievance sought Plaintiffs reinstatement and back pay dating back to the date of the settlement. The "Statement of Grievance" attached to the grievance form reported that during his fourth and final meeting with Love (which occurred in late February, 2012) Love "stated that her department head said there was a clause in [the] settlement that stated [that Plaintiff] could not return to work." [58-7] at 4. According to the Statement of Grievance, Plaintiff consulted with his attorney and then called Love back and told her that there was no such clause in his settlement. *Id.* at 4. Love allegedly told Plaintiff that "it was up to the attorneys." *Id.*

On June 20, 2012, the City denied Plaintiff's grievance. They denied his grievance again on August 29, 2012.[1] On February 14, 2013, an attorney for the City, JoAnn Lim, sent a letter to Plaintiff's union attorney, Nicholas Kasmer. Lim told Kasmer that Plaintiff had a "quasi permanent disability." [56] at 13. According to Plaintiff, "[t]his was the first time anyone from the City informed Plaintiff that it believed him to be disabled" and the "first time Defendant informed Plaintiff he could not return to work based upon his injuries." [57] at 5-6. On April 7, 2013, Kasmer told Plaintiff, "now we know why they're not returning you to work because they're perceiving you to be still disabled or unable to perform the job." [56] at 7. On April 9, 2013, Plaintiff and the City arbitrated his grievance. On November 13, 2013, the arbitrator entered a decision awarding Plaintiff reinstatement without back pay, subject to his successful completion of a functional capacity evaluation ("FEC") and an independent medical evaluation ("IME").

---

[1] Neither party filed the grievance denials as exhibits in the record.

On December 6, 2013, Plaintiff filed a Charge of Discrimination with the EEOC alleging claims of age and disability discrimination and retaliation between January 2012 and February 12, 2013. Plaintiff filed a second Charge of Discrimination with the EEOC on January 13, 2014, also alleging age and disability discrimination based on the same facts alleged in the December EEOC charge.

Subsequently, Plaintiff passed the FEC and the IME. He was reinstated by the City as a mechanical engineer on April 3, 2014.

On April 29, 2014, Plaintiff filed the instant lawsuit against the City. The Complaint contains one claim, for violation of the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"). The complaint alleges that the City intentionally discriminated against him based on his perceived disability by barring him from returning to work from January 2012 to January 2014.

## II. Legal Standard

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Factual disputes that are irrelevant to the outcome of the suit "will not be counted." *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003) (quotation marks and citations omitted). In determining whether there is a genuine issue of fact, the Court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks

and citation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movants] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

### III. Analysis

The Americans with Disabilities Act "prohibits employers from taking adverse employment actions against their employees because of a disability." *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 606 (7th Cir. 2012); see 42 U.S.C. § 12112(a). To establish a violation of the Act an employee must show "'1) that she is disabled; 2) that she is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and 3) that the employer took an adverse job action against her because of her disability or failed to make a reasonable accommodation.'" *Winsley v. Cook Cnty.*, 563 F.3d 598, 603 (7th Cir. 2009) (quoting *Stevens v. Ill. Dep't of Transp.*, 210 F.3d 732, 736 (7th Cir. 2000)).

The threshold issue before the Court on Defendant's motion for summary judgment is whether Plaintiff timely filed his charge with the EEOC, which is a prerequisite to filing an ADA claim. In Illinois, in order for a plaintiff to file a suit under the ADA, the plaintiff must file a

6

charge with the EEOC within 300 days of when the alleged discrimination occurred. 42 U.S.C. §§ 2000e-5(e)(1), 12117(a); see also *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000); *Cardenas v. First Midwest Bank*, 114 F. Supp. 3d 585, 592 (N.D. Ill. 2015). "The requirement that a plaintiff timely file an administrative charge with the EEOC serves two purposes: it promotes the prompt and less costly resolution of the dispute by settlement or conciliation and ensures timely notice to the employer of the grievance." *Porter v. New Age Servs. Corp.*, 463 F. App'x 582, 584 (7th Cir. 2012) (citing *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009)).

In this case, the City's alleged discriminatory act was its refusal to return Plaintiff to work after he received medical clearance from his doctor. Based on its review of the parties' briefs, Rule 56.1 statements, and exhibits, the Court concludes that Plaintiff was informed that he would not be allowed to return to work in late February 2012. Plaintiff avers in both his statement of additional facts and the statement of grievance that he attaches as an exhibit that, at his fourth and final meeting with Love in late February, Love told him that there was a provision in his settlement agreement that prohibited him from coming back to work. Assuming that Plaintiff received this information on the last day of February 2012 (February 29, 2012), then he was required to file an EEOC charge by November 26, 2012 (302 days later, since November 24, 2012 fell on a Saturday). Plaintiff filed his EEOC charge on December 6, 2013, which was more than a year too late.

That is not the end of the Court's inquiry, however, because the time period for filing an EEOC charge "is subject to equitable doctrines such as tolling or estoppel." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002); see also *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 460 n.2 (7th Cir. 2007). The Supreme Court has cautioned that both

7

doctrines are "to be applied sparingly." *Morgan*, 536 U.S. at 113. Plaintiff argues that both doctrines apply here and that his EEOC charge, therefore, was timely filed. The Court will examine each doctrine in turn.

"In discrimination cases equitable tolling extends filing deadlines in only three circumstances:" (1) "when a plaintiff exercising due diligence cannot within the statutory period obtain the information necessary to realize that she has a claim"; (2) "when a plaintiff makes a good-faith error such as timely filing in the wrong court"; or (3) "when the defendant prevents a plaintiff from filing within the statutory period." *Porter v. New Age Servs. Corp.*, 463 F. App'x 582, 584 (7th Cir. 2012). "Equitable tolling requires a court to consider whether a reasonable person in the plaintiff's position would have been aware of the *possibility* that he had suffered an adverse employment action because of illegal discrimination." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860-61 (7th Cir. 2005) (emphasis in original). Equitable tolling only applies when, despite all due diligence, the "'plaintiff cannot obtain the information necessary to realize that he may possibly have a claim.'" *Jones v. Res-Care, Inc.*, 613 F.3d 665, 670 (7th Cir. 2010) (quoting *Beamon*, 411 F.3d at 860).

Under Seventh Circuit case law, a plaintiff alleging employment discrimination "awakens to the possibility" of a claim "far sooner than he achieves any level of certainty that his rights have been violated." *Beamon*, 411 F.3d at 861. The Seventh Circuit has elaborated that "[t]he qualification 'possible' is important," because "[i]f a plaintiff were entitled to have all the time he needed to be *certain* his rights had been violated, the statute of limitations would never run—for even after judgment, there is no certainty." *Id.* (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990) (emphasis in original)).

Plaintiff argues that the first and third theories of equitable tolling apply in this case. Specifically, Plaintiff argues that he could not with reasonable diligence have obtained the information necessary to realize that he had an ADA claim against the City, because the City did not inform him until February 14, 2014 of the alleged real reason that the City refused to return him to work—that it regarded him as quasi-disabled—and instead told him that there was something in his settlement agreement that prevented him from returning to work.

The Court concludes that neither theory of equitable tolling applies here because a reasonable person in Plaintiff's position would have been aware of the possibility that he was not returned to work due to the City's discrimination against his disability. Plaintiff acknowledges that the City informed him by the end of February 2012 that he would not be allowed to return to work. See [58] at 6 (Plaintiffs Rule 56.1 statement); [58-7] at 4 (Plaintiffs Statement of Grievance). Plaintiff also acknowledges that he did not believe that the City's sole proffered reason for this refusal—an unspecified provision in his settlement agreement—was valid. According to Plaintiffs Statement of Grievance, when Love told him that "her department head said there was a clause in my settlement that stated [that Plaintiff] could not return to work," Plaintiff called his attorneys and then called Love back to inform her that there was no such clause in his settlement. [58-7] at 4. These facts alone would likely be enough to put a reasonable person in Plaintiff's shoes on notice that one possible reason that the City would not allow Plaintiff to return to work was that the City believed that Plaintiff—who had been on disability leave for over thirteen years and had recently settled a workers' compensation claim compensating him for his disability—remained disabled and unable to perform the functions of his job. See, *e.g.*, *Jackson v. Rockford Hous. Auth.*, 213 F.3d 389, 397 (7th Cir. 2000) (equitable tolling of statute of limitations did not apply in Title VII action arising from promotion of

9

Caucasian rather than African-American applicant to management position with public housing agency since, when African-American applicant learned that agency hired the white candidate, he knew that one possible explanation was racial discrimination).

But in this case, there is more. In his March 8, 2012 email to his attorney, Gogola, Plaintiff specifically recognized the possibility that the City may be discriminating against him due to a perceived disability and that this would violate the ADA. Plaintiff told Gogola that he is "covered by the 'Federal Americans with Disabilities Act' if the City is claiming I'm disabled even though I can do the job in full capacity." [56] at 12 (emphasis added). This email demonstrates that by early March, 2012 Plaintiff was in fact "aware of the *possibility* that he had suffered an adverse employment action because of illegal discrimination." *Beamon*, 411 F.3d at 860-61 (emphasis in original). Therefore, the Court concludes that the equitable tolling doctrine did not extend the time in which Plaintiff was required to file his charge with the EEOC.

The Court next considers whether equitable estoppel applies to save Plaintiff's ADAAA claim. "Equitable estoppel, which is a doctrine of federal law, 'comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by promising not to plead the statute of limitations.'" *Rosado v. Gonzalez*, -- F.3d --, 2016 WL 4207961, at *2 (7th Cir. Aug. 10, 2016) (quoting *Shropshear v. Corp. Counsel of Chicago*, 275 F.3d 593, 595 (7th Cir. 2001)). This doctrine "presupposes 'efforts by the defendant, above and beyond the wrongdoing upon which the plaintiff's claim is founded, to prevent, by fraud, the plaintiff from suing in time.'" *Id.* (quoting *Shropshear*, 275 F.3d at 595). In addition, where, as here, equitable estoppel is being asserted "against the government," the plaintiff "must also prove affirmative misconduct." *Lewis v. Washington*, 300 F.3d 829, 834 (7th Cir. 2002) (citing *Gibson v. West*, 201 F.3d 990, 994 (7th Cir. 2000)). "Affirmative misconduct requires an affirmative act to misrepresent or mislead . . .

[and] a government's failure to discharge an 'affirmative obligation' is not the same as engaging in 'affirmative misconduct.'" *Id.* (quoting *Gibson*, 201 F.3d at 994). Moreover, "once the circumstance giving rise to the estoppel is removed—once, for example, despite the defendant's efforts at concealment, the plaintiff learns that he has a claim—the filing of the suit cannot be delayed indefinitely." *Shropshear*, 275 F.3d at 597.

In this case, Plaintiff argues that the City engaged in the following affirmative misconduct to prevent him from filing suit on time: 1) telling him that the settlement agreement prevented his return; 2) refusing to identify what provision of the settlement prevented his return; and 3) threatening to bring legal action against him if he pursued his grievance. The Court concludes that the first two facts are insufficient to justify application of equitable estoppel because they did not prevent Plaintiff from filing his EEOC charge in time. "[A] plaintiff seeking the benefit of equitable estoppel must demonstrate that he actually and reasonably relied upon the defendant's improper conduct." *Castro v. City of Chicago*, 2013 WL 5435275, at *3 (N.D. Ill. Sept. 30, 2013); see also *Ashafa v. City of Chicago*, 146 F.3d 459, 463 (7th Cir. 1998); *Angiulo v. United States*, 867 F. Supp. 2d 990, 999 (N.D. Ill. 2012). While the City told Plaintiff that there was something in his settlement that prevented his return to work, Plaintiff admits that he did not believe the City and knew that the settlement did not contain any provisions that would prohibit him from returning to work. In addition, the second fact—the City's refusal to identify the relevant provision of the settlement—is not "affirmative misconduct," but rather was a mere refusal to respond to Plaintiff's inquiry. See *Hicks v. Medline Indus., Inc.*, 247 F. App'x 808, 811 (7th Cir. 2007) ("equitable estoppel is inapplicable [where the plaintiff] has adduced no evidence that [the defendant] took active steps to prevent her from suing"); *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 269 n.4 (7th Cir. 1995) (age discrimination plaintiff's claims that

11

corporate executives clammed up in response to his and a friend's inquiries into his dismissal could not form basis to apply equitable estoppel to preclude application of statute of limitations for filing a charge with EEOC); *Lever v. Nw. Univ.*, 979 F.2d 552, 556 (7th Cir. 1992) (university was not equitably estopped to assert statute of limitations as defense to female professor's employment discrimination claim, where university did nothing to dissuade professor from filing a charge).

The third fact—the City's alleged threat to bring an action against Plaintiff—is also insufficient to justify the applicable of equitable estoppel, because under Seventh Circuit case law "a threat to retaliate is not a basis for equitable estoppel." *Beckel v. Wal-Mart Associates, Inc.*, 301 F.3d 621, 624 (7th Cir. 2002) (citing *Kirk v. Hitchcock Clinic*, 261 F.3d 75, 78 (1st Cir. 2001)). The Seventh Circuit has explained that, "[r]ather than deterring a reasonable person from suing," a threat to retaliate would "increase her incentive to sue by giving her a second claim . . . for retaliation on top of her original claim." *Id.*; see *also Castro*, 2013 WL 5435275, at *3.

Finally, the Court concludes that the doctrine of equitable estoppel does not apply because even if Plaintiff was unable to discover his cause of action until February 14, 2013, he still did not file his EEOC charge in a timely manner. *Shropshear*, 275 F.3d at 597. Plaintiff waited more than ten months from his alleged discovery, until December 6, 2013, to file his EEOC charge. The Seventh Circuit has found shorter delays to be unreasonable when applying equitable estoppel, even where the plaintiff has been pursuing a remedy through the employer's internal grievance procedure in the meanwhile. See *Hentosh v. Herman M Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1175 (7th Cir. 1999) (even if 300-day period for filing sexual harassment charge with EEOC were equitably tolled due to employee's lack of

information about department chairman's alleged sexual harassment of co-workers, employee's delay of nearly 7 months in filing charge after obtaining such information, allegedly because she was attempting to resolve the issue within the department, was unreasonable, rendering charge untimely); see also *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 722 (7th Cir. 2004) (existence of employer's internal review process, which employee chose to trust would resolve his discrimination complaint to his satisfaction, did not warrant application of equitable estoppel doctrine so as to preclude employer from relying on statute of limitations as a defense to Title VII claims in which EEOC charges were filed outside the 300-day limitations period); *Perrywatson v. United Airlines, Inc*., 762 F. Supp. 2d 1107, 1113-14 (N.D. Ill. 2011) (pendency of arbitration or grievance procedure does not toll limitations period on employment discrimination claims, because contractual rights provided by arbitration process are separate and quite different from statutory rights Congress has provided through provisions like the ADA).

## IV. Conclusion

For these reasons, the Court grants Defendant City of Chicago's motion for summary judgment [54]. This order resolves all remaining claims in the case. Judgment will be entered in favor of Defendant and against Plaintiff.

Dated: September 26, 2016

Robert M. Dow, Jr.
United States District Judge